## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA, *et al*,    )
*ex rel*. MICHAEL YARBERRY,           )
                                      )
        Plaintiffs,          )
                                      )
vs.                                   )
                                      )   **Case No. 09-cv-00588-MJR-PMF**
SEARS HOLDINGS CORP., and             )
KMART CORP.,                          )
                                      )
        Defendants.          )

### ORDER

**REAGAN, District Judge:**

        Defendants Sears Holdings Corporation ("Sears") and Kmart Corporation ("Kmart") are before the Court seeking to dismiss all 16 counts of the Second Amended Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 9(b) (Docs. 73, 74). Plaintiff-Relator Michael Yarberry, and the 16 states that have joined as plaintiffs, have filed a brief in opposition (Doc. 88).

        The Second Amended Complaint (Doc. 69) alleges that, from approximately 2006 to the present, Defendants Sears and Kmart violated the federal False Claims Act ("FCA"), 31 U.S.C. §§ 3729(a)(1), (a)(2) and (a)(7), as well as the Anti-Kickback Act ("AKA"), 42 U.S.C. § 1320a-7b, by offering and paying unreported monetary inducements, such as cash gift cards and/or coupon promotions, to the beneficiaries of Government Healthcare Programs ("GHPs"), including Medicare, Medicaid, TRICARE and CHAMPUS,[1] in exchange for beneficiaries filling their prescriptions at Defendants' pharmacies. From Relator Yarberry's perspective, a claim

---

[1] TRICARE is a comprehensive managed healthcare program covering active members of the Uniformed Services and their dependents. CHAMPUS is the Civilian Health and Medical Program of the Uniformed Services, the benefits program for former military personnel.

presented to a GHP[2] for payment for a prescription transaction that stemmed from a kickback is necessarily false and illegal, making Defendants ineligible for payment.  Counts II-XVI of the Second Amended Complaint raise similar fraud claims brought pursuant to the laws of 13 states.

1. Relevant Legal Standards

a. Pleading Standards

Defendants premise their motion upon Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 9(b).

A motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a court's subject matter jurisdiction.  "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area School Disrict,* 475 U.S. 534, 541 (1986).  Therefore, the objection presented by a Rule 12(b)(1) motion challenging the Court's subject matter jurisdiction is that the Court has no authority or competency to hear and decide the case before it.  *International Union of Operating Engineers Local 150, AFL–CIO v. Ward,* 563 F.3d 276, 280–82 (7th Cir. 2009).  It is also well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *See Bell v. Hood,* 327 U.S. 678, 682 (1946).

In deciding a motion to dismiss for failure to state a claim on which relief can be granted under Rule 12(b)(6), the district court's task is to determine whether the complaint includes "enough facts to state a claim to relief that is plausible on its face." *Khorrami v. Rolince,* 539 F.3d 782, 788 (7th Cir. 2008), *quoting Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007).  The Court of Appeals for the Seventh Circuit has clarified that, even after *Twombly,*

---

[2] Many GHP programs involve one or more bureaucratic layers, which end with pharmacy benefit management companies that contract with retail pharmacies.

courts must still approach Rule 12(b)(6) motions by construing the complaint in the light most favorable to the non-moving party, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in the non-moving party's favor. *Hecker v. Deere & Co.,* 556 F.3d 575, 580 (7th Cir. 2009), *cert. denied,__*U.S. __, 130 S.Ct. 1141 (2010) (*quoting Tamayo v. Blagoyevich,* 526 F.3d 1074, 1081 (7th Cir. 2008)).

Legal conclusions and conclusory allegations that merely recite the elements of a claim are not entitled to the presumption of truth afforded to well-pled facts. *See McCauley v. City of Chicago,* 671 F.3d 611, 616 (7th Cir. 2011). Therefore, after excising the allegations not accepted as true, the Court must decide whether the remaining factual allegations plausibly suggest entitlement to relief. *Id*. In other words, the complaint must contain allegations plausibly suggesting—not merely consistent with—an entitlement to relief. *Id.* (citing *Twombly,* 550 U.S. at 557). This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley,* 671 F.3d at 616 (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 663–64 (2009)).

Federal Rule of Civil Procedure 9(b) requires an elevated pleading standard for fraud claims, such as the claims asserted in this action. "In alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b) (emphasis added). *See also Tricontinental Industries, Ltd. v. Pricewaterhousecoopers, LLP,* 475 F.3d 824, 833 (7th Cir. 2007). Rule 9 is aimed at: "(1) protecting a defendant's reputation from harm; (2) minimizing 'strike suits' and 'fishing expeditions;' and (3) providing notice of the claim to the adverse party." *Vicom, Inc. v. Harbridge Merch. Serus., Inc.,* 20 F.3d 771, 777 (7th Cir. 1994). The Court of Appeals for the Seventh Circuit has explained that the complaint must plead "who, what, when, where, and how." *Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547,

3

569 (7th Cir. 2012) (citing *Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services, Inc.,* 536 F.3d 663, 668 (7th Cir. 2008)); *United States ex rel. Gross v. AIDS Research Alliance–Chicago,* 415 F.3d 601, 605 (7th Cir. 2005).  With that said, Rule 9(b) does not require a relator to plead evidence and is to be read in conjunction with Federal Rule of Civil Procedure 8, which requires a short and plain statement of the claim.  S*ee Tomera v. Galt,* 511 F.2d 504, 508 (7th Cir. 1975).

b.   The False Claims Act

"To establish civil liability under the False Claims Act ("FCA")[3], a relator generally must prove (1) that the defendant made a statement in order to receive money from the government; (2) that the statement was false; and (3) that the defendant knew the statement was false." *United States ex rel. Yannacopoulos v. General Dynamics,* 652 F.3d 818, 822 (7th Cir. 2011) (citing *United States ex rel. Gross v. AIDS Research Alliance–Chicago,* 415 F.3d 601, 604 (7th Cir. 2005)).

The Court of Appeals for the Seventh Circuit has further stated:

An FCA claim premised upon an alleged false certification of compliance with statutory or regulatory requirements also requires that the certification of compliance be a condition of or prerequisite to government payment. *United States ex rel. Mikes v. Straus,* 274 F.3d 687, 697 (2d Cir. 2001); *United States ex rel. Siewick v. Jamieson Science & Engineering,*

---

[3] It should be noted that the FCA, 31 U.S.C. § 3729, was amended during the time period relevant to this action.  *See* Pub.L. No. 111–21, 123 Stat. 1617 (May 20, 2009).  In particular, the standard of liability was changed.  The FCA previously imposed liability for "knowingly mak[ing] ... a false record or statement to get a false or fraudulent claim paid or approved by the Government," 31 U.S.C. § 3729(a)(2) (2006).  Now, the amended liability standard imposes liability for "knowingly mak[ing] ... a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B) (2012). These amendments were characterized as "Clarifications to the False Claims Act to Reflect the Original Intent of the Law," intended to "clarify and correct erroneous interpretations of the law." Pub.L. No. 111–21, § 4, 123 Stat. 1617, 1621–25; *Sanders v. Allison Engine Co., Inc*., 703 F.3d 930, 934 (6th Cir. 2012).  Thus, the changes are not particularly significant to this action.  Consequently, the Court, like the parties, will primarily cite to the 2006 version of the FCA.

*Inc.,* 214 F.3d 1372, 1376 (D.C.Cir. 2000); *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 786-87 (4th Cir. 1999); *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.,* 125 F.3d 899, 902 (5th Cir. 1997); *United States ex rel. Hopper v. Anton,* 91 F.3d 1261, 1266-67 (9th Cir. 1996).

*Gross*, 415 F.3d at 604.

     c.  <u>The Anti-Kickback Act</u>

The Anti-Kickback Act ("AKA") prohibits knowingly and willfully offering or paying any remuneration (including kickbacks, bribes and rebates, in cash or in kind) to any person to induce that person to purchase  or order any good for which payment may be made, in whole or in part, under a federal healthcare program.  42 U.S.C. § 1320a–7b(b)(2)(B).

     2.  <u>Analysis</u>

Each of Defendants' arguments for dismissal will be analyzed in turn.

     a.  <u>Identification of False Statements</u>

Defendants assert that the Second Amended Complaint does not identify any false statement allegedly made by Defendants.  In *United States ex rel. Fowler v. Caremark Rx, L.L.C.*, 496 F.3d 730, 741-42 (7th Cir. 2007), specific evidence "at an individualized transaction level" was required to be pleaded.  Relator counters that the Second Amended Complaint does contain specific examples where Defendants violated the AKA and still presented claims for reimbursement:  Doc. 69, ¶¶ 38, 50 (when read along with Ex. H), 52 and 59.

A review of the portions of the Second Amended Complaint cited by Relator confirms that paragraphs 38, 52 and 59 are specific examples of apparent AKA violations—detailing the "who, what, when, where and how" of the "kickback."  None of the cited incidents of kickback activity is linked to a particular claim that was submitted to the government.  However, the Second Amended Complaint does contain a broad allegation that "[c]ompliance

5

with federal and state statutes prohibiting kickbacks is a material condition to payment under Federal [sic] and state government healthcare programs" (Doc. 69, ¶ 2). Thus, the FCA claim is sufficiently clear and satisfies the heightened pleading standard in Rule 9(b), in the manner prescribed in *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012), and *United States ex rel. Gross v. AIDS Research Alliance–Chicago,* 415 F.3d 601, 605 (7th Cir. 2005).

The Seventh Circuit has not specifically addressed a scenario such as this, where an FCA claim is premised upon an inference or implied certification. However, the Court finds such an implied certification sufficient at the pleading stage.

> In March 2010, as part of the Patient Protection and Affordable Care Act of 2010 ("PPACA"), Pub.L. No. 111–148, 124 Stat. 119 (Mar. 23, 2010), the Anti–Kickback Statute was amended to provide expressly that "a claim that includes items or services resulting from a violation of [the Anti–Kickback Statute] constitutes a false or fraudulent claim for purposes of [the FCA]." 42 U.S.C. § 1320a–7b(g) (as amended by § 6402 of PPACA). But, even before this express statutory amendment, some courts had recognized that a violation of the Anti–Kickback Statute could, under some circumstances, form a predicate for FCA liability. *See, e.g., United States ex rel. Franklin v. Parke–Davis, Div. of Warner–Lambert Co.,* 147 F.Supp.2d 39, 54 (D.Mass. 2001) ("In order for the anti kickback violation to be transformed into an actionable FCA claim, the government must have conditioned payment of a claim upon the claimant's certification of compliance with the antikickback [sic] provision. That certification may be proven by evidence showing the claimant expressly agreed to abide by the law as a condition of payment. In the absence of an affirmative certification, some courts have found 'implied certification' by virtue of the defendant's participation in the federal program.") (internal citations omitted).

*United States ex rel. Palmieri v. Alpharma, Inc.*, __ F.3d __, 2013 WL 821965, 4 (D.Md. Mar. 5, 2013).[4]

---

[4] Defendants assert that to satisfy Rule 9(b) the Second Amended Complaint must reflect that at least one false claim was submitted.  Defendants cite *United States ex rel. Crews v. NCS Healthcare of Illinois,* 460 F.3d 853, 856 (7th Cir. 2006) (holding that a relator must provide at least one false claim that was actually submitted to survive a motion for summary judgment).  Of course, this is not the summary judgment phase of litigation. Defendants also cite *United States*

Of course, "[t]o say that fraud has been *pleaded* with particularity is not to say that it has been *proved,"* and therefore relator's allegations could very well be wrong. *United States ex rel. Lusby v. Rolls–Royce Corp.,* 570 F.3d 849, 853 (7th Cir. 2009).

    b.  <u>Certificate of Compliance</u>

Defendants argue that the Second Amended Complaint does not allege that they submitted or caused to be submitted a facially false claim, false statement or record.   Defendants rely upon *United States ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1020 (7th Cir. 1999), in which the appellate court emphasized that the FCA is a fraud prevention statute requiring proof of fraud, not merely violations of other statutes.  In *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 376 (7th Cir. 2003), the appellate court appears to have concurred with the district court's explanation that, if a false statement is alleged, the complaint must connect that statement to a specific claim for payment and state who made the statement to whom and when.  Similarly, in *U.S. ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601, 604 (7th Cir. 2005), the Seventh Circuit explained, "[a]n FCA claim premised upon an alleged false certification of compliance with statutory or regulatory requirements also requires that the certification of compliance be a condition of or prerequisite to government payment (citations omitted).  Defendants assert that there is no claim that they certified compliance with the Anti-Kickback Act.

Defendants read too much into *Lamers* and *Gross*.  In *Gross*, the appellate court did highlight that the relator had "failed to allege that any particular certification of regulatory

---

*ex rel. Fowler v. Caremark RX LLC,* 496 F.3d 730, 742–43 (7th Cir. 2007), but *Fowler* did not specifically require that submission of a false claim be pleaded.   Furthermore, *Fowler* was *overruled by Glaser v. Wound Care Consultants, Inc.,* 570 F.3d 907, 910 (7th Cir. 2009).

compliance was a *condition* of payment of government money." *Gross*, 415 F.3d 415 F.3d at 605. The appellate court's point being, "[t]hese conclusory allegations shed no light on the nature or content of the individual forms or why any particular false statement would have caused the government to keep the funding spigot open, much less when any payments occurred or how much money was involved." *Id*. Again, the allegation that "[c]ompliance with federal and state statutes prohibiting kickbacks is a material condition to payment under Federal [sic] and state government healthcare programs" (Doc. 69, ¶ 2) provides the essential link between the AKA violation and the FCA claim. *See also United States v. Rogan*, 517 F.3d 449, 452-53 (7th Cir. 2008) ("The United States is entitled to guard the public fisc against schemes designed to take advantage of overworked, harried, or inattentive disbursing officers; the False Claims Act does this by insisting that persons who send bills to the Treasury tell the truth. As Justice Holmes put it, '[m]en must turn square corners when they deal with the Government.' *Rock Island, Arkansas & Louisiana R.R. v. United States,* 254 U.S. 141, 143, 41 S.Ct. 55, 65 L.Ed. 188 (1920)"). Although the allegation in paragraph 2 of the Second Amended Complaint is broad, it explains why the false statements would have "caused the government to keep the funding spigot open."

In *United States ex rel. Hutcheson v. Blackstone Medical, Inc*., 647 F.3d 377, 390 (1st Cir. 2011), the First Circuit rejected the very premise of Defendants' argument, that certification is required for liability. The First Circuit observed that certification is not mentioned in Sections 3729(a)(1) or (a)(2), and " '[s]o long as the statement in question is knowingly false when made, it matters not whether it is a certification, assertion, statement, or secret handshake; False Claims liability can attach.' " *Hutcheson*, 647 F.3d at 389-90 (quoting *United States ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166, 1172 (9th Cir. 2006)).

c.  <u>Violation of the AKA</u>

Defendants contend that the Second Amended Complaint fails to plead a violation of the Anti-Kickback Act ("AKA").  Defendants argue that the kickback allegations, untethered to specific transactions, lack the specificity to support an AKA-based FCA claim. As Defendnats see things, all that is alleged is "happenstance," where ineligible customers received gift cards. In contrast, as evidence that Defendants were merely like ostriches with their heads in the sand creating plausible deniability, Relator offers statements by Defendants to their pharmacists, such as "don't trouble yourself with being the coupon police" (Doc. 69, ¶ 10, Ex. D), and the fact that Defendants did not initially utilize an available computer program to prevent GHP customers from mistakenly receiving gift cards and the like.

Relator correctly stresses that at this stage in the proceedings the allegations in the Second Amended Complaint are taken as true.  The import of various statements, actions and inactions are for a jury to weigh.  However, at this juncture those allegations are sufficient to evince the required knowledge and willfulness to induce GHP customers to purchase their prescription drugs from Defendants' pharmacies, which in turn would result in payments being made in whole or in part from a federal healthcare program.

Defendants cite *United States ex rel. Crews v. NCS Healthcare of Illinois, Inc.,* 460 F.3d 853, 856 (7th Cir. 2006), for the proposition that a relator cannot substitute mathematical inferences for specific claims, without alleging a single specific claim submission, in order to satisfy the Rule 9(b) pleading standard.  This argument is made in connection with allegations that the number of gift cards increased dramatically, from 18,200 to 49,729, when the computer safeguards were not used (Doc. 69, ¶ 36).  However, Defendants ignore the fact that

Relator's AKA claims do not rest solely on a mathematical inference.  As already discussed, specific claims have been pleaded with sufficient specificity to satisfy Rule 9(b).

Defendants do correctly observe that one of the specific kickback incidents is not properly pleaded to state an AKA violation.  The allegation in paragraph 50 of the Second Amended Complaint (a July 7, 2008, transaction) does not specify that a government healthcare program was involved.  Therefore, a FCA claim cannot "piggyback" on that particular allegation.

Defendants are incorrect in asserting that the transaction described in paragraph 52 of the second Amended Complaint (a January 28, 2008, transaction) fails to identify the pharmacist involved.  It is alleged that Kmart Store # 4180 was involved, which is sufficient.

Defendants contend that the sort of nominal tokens purportedly involved in this action—valued at $10 or less—are permissible under the "Anti-Inducement Act, SSA § 1128A(a)(5)" and should be applied to the AKA.  Defendants citations are far from clear and the Court need not do Defendants' research for them.  Relator references the Civil Monetary Penalties Statute, 42 U.S.C. § 1320a-7a, as interpreted by 65 Fed.Reg. 24411 (April 26, 2000), as the appropriate citation.  In any event, Defendants cite no authority for the proposition that there is a $10 safe harbor under the AKA.  The AKA makes no reference to any safe harbor amount.  This argument appears to have been made from whole cloth.  Consequently, the Court is not persuaded, nor will the Court consider Defendants' assertions that the multiple alleged kickbacks are *de minimis* and cannot form the basis of an actionable claim.

Defendants also argue that the Second Amended Complaint fails to link On Time Guarantee ("OTG") cards to any GHP customers, thus failing to meet the Rule 9(b) pleading requirements.  Relator doe not dispute that no specific claim is linked to the OTG card program.

Therefore, (even if this argument is merely a "straw man") the Court concludes that no claim related to the OTG card program is properly pleaded.

    d.  <u>Sears</u>

Defendants argue that the Second Amended Complaint fails to plead any claims against Sears. Defendants acknowledge that paragraph 52 of the Second Amended Complaint references a Kmart pharmacy that is located in a Sears Essential Store, but Defendants assert that the pharmacy was owned, operated and licensed by Kmart, not Sears.

Relator cites paragraphs 52, as well as Exhibits D, F, J, M, N and O. A review of these portions of the Second Amended Complaint reveals that, at least with respect to Exhibits D and F, there is a single Sears Essential pharmacy, Store 4180. Although Defendants assert that pharmacy is not actually associated with Sears, that is a bald assertion and, at this stage in the proceedings the Court will not look beyond the Second Amended Complaint. Paragraph 52, pertaining to pharmacy store 4180, otherwise states a viable ACA/FCA claim and Sears must remain as a defendant.

    e.  <u>Public Disclosure</u>

Defendants assert that the Court lacks subject matter jurisdiction[5] because the information supporting the Second Amended Complaint was publicly disclosed prior to Relator filing his complaint and Relator is not an original source.

The present version of the FCA contains a "public disclosure" bar to suit, 31 U.S.C. § 3730(e)(4)(A)(iii), "if substantially the same allegations of transactions as alleged in the action or claim were publicly disclosed … from the news media … unless … the person bringing

---

[5] Whether Section 3730 is deemed substantive or jurisdictional does not impact the analysis or result.

the action is an original source of the information."[6]   In pertinent part, "original source" is

defined as an individual "who has knowledge that is independent of and materially adds to the

publicly disclosed allegations or transactions, and who has voluntarily provided the information

to the Government before filing an action …."   31 U.S.C. § 3730(e)(4)(B).   The public

disclosure bar is designed to limit " 'me too' private litigation."   *United States ex rel. Goldberg*

*v. Rush University Medical Center*, 680 F.3d 933, 934 (7th Cir. 2012).

> For purposes of § 3730(e)(4), a "public disclosure" occurs when "the critical elements exposing the transaction as fraudulent are placed in the public domain." *United States ex rel. Feingold v. AdminaStar Fed., Inc.,* 324 F.3d 492, 495 (7th Cir. 2003). *Feingold* explained that a public disclosure "bring[s] to the attention of the relevant authority that there has been a false claim against the government." *Id.* The public-disclosure bar is designed to prevent lawsuits by private citizens in such situations because "[w]here a public disclosure has occurred, that authority is already in a position to vindicate society's interests, and a *qui tam* action would serve no purpose." *Id.*

*Glaser v. Wound Care Consultants, Inc.,* 570 F.3d 907, 913 (7th Cir. 2009).

Defendants contend that, because the allegations of a nationwide incentive

program were announced in the media, the public disclosure bar has been triggered, even if there

---

[6] The Patient Protection and Affordable Care Act ("PPACA"), 124 Stat. 119, 901-902, amended the public disclosure bar, 31 U.S.C. § 3730(e)(4), as of March 23, 2010. Prior to the amendment, Section 3730(e)(4)(A) read as follows: "No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions … from the news media." Following the amendment, Section 3730(e)(4)(A) now states: "The court shall dismiss an action or claim under this section … if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed …."   The amendment is not retroactive.   *Graham County Soil and Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, ——, n. 1, 130 S.Ct. 1396, 1401, n. 1 (2010).   The amended statute substitutes the language "substantially the same" for "based upon."  In  *Glaser v. Wound Care Consultants, Inc.,* 570 F.3d 907, 914-15 (7th Cir. 2009), the Seventh Circuit joined the majority of other circuits and construed "based upon" as meaning "substantially similar to," as opposed to "derived from."   Accordingly, in *Schindler Elevator Corp. v. United States ex rel. Kirk*, __U.S. __, 131 S.Ct. 1885, 1891 (2011), the Supreme Court interpreted Section 3730(e)(4)(A) as providing a "broad sweep."   Therefore, the Court does not perceive that the amendment affects the analysis in this case, where some events occurred before the amendment and others occurred after the March 23, 2010, effective date.

was no disclosure of fraud or other wrongdoing.  *See Hagood v. Sonoma County Water Agency*, 81 F.3d 1465, 1473 (9th Cir. 1996).  From Defendants' perspective, Relator added little to what the public already knew.  Furthermore, Defendants argue that Relator offers no more than the assertion that he is an original source, which is impossible to some extent because certain transactions predate when Relator was rehired by Kmart (indicating a third party source).

Relator correctly observes that the fraudulent conduct was never in the public domain; the fraud could not be inferred from the information that was public.  *Glaser*, 570 F.3d at 913 (quoting *United States v. Feingold v. AdminaStar Federal, Inc*., 324 F.3d 492, 495 (7th Cir. 2003): "a 'public disclosure' exists under § 3730(e)(4)(A) when the critical elements exposing the transaction as fraudulent are placed in the public domain").  *See also United States ex rel. Springfield Terminal Railway Co. v. Quinn*, 14 F.3d 645, 654 (D.C. Cir. 1994) ("if X + Y = Z, Z represents the *allegation* of fraud and X and Y represent its essential elements. In order to disclose the fraudulent *transaction* publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z").   Merely offering coupons, gift cards and the like for filling a prescription at Kmart or Sears does not suggest fraud; the addition of Relator's knowledge of the covert policy and practice of ignoring GHP members' ineligibility is the key ingredient in the fraud allegation.

Because there was no public disclosure for purposes of Section 3730(e)(4)(A), whether Relator Yarberry qualifies as an original source is irrelevant.  *See* 31 U.S.C. § 3730(e)(4)(A).

3.   <u>Conclusion</u>

For the reasons stated, the motion to dismiss filed by Defendants Sears Holdings

Corporation and Kmart Corporation (Doc. 73) is **DENIED**.  The Court finds: (1) the allegations

in paragraph 50 of the Second Amended Complaint (a July 7, 2008, transaction), as pleaded, are

insufficient to form the basis for a False Claims Act violation; and (2) no claim has been pleaded

related to On Time Guarantee cards.

IT IS SO ORDERED.

DATE:  March 28, 2013

s/ Michael J. Reagan
MICHAEL J. REAGAN
UNITED STATES DISTRICT JUDGE