IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| THE UNITED STATES OF AMERICA, *et al., ex rel.* MICHAEL YARBERRY, | No. 3:09-cv-00588-MJR/PMF |
| Plaintiffs, | CJRA TRACK: C |
| vs. | PRESUMPTIVE TRIAL DATE: DECEMBER 2, 2013 |
| SEARS HOLDINGS CORPORATION, and KMART CORPORATION, | Hon. Michael Reagan |
| Defendants. | |

**MOTION TO EXCLUDE JEREMY J. ALBRIGHT AS AN EXPERT WITNESS**

Defendants, Sears Holding Corporation ("Sears") and Kmart Corporation ("Kmart") (collectively "Defendants"), by and through their undersigned counsel, Greenberg Traurig, LLP, and pursuant to Fed. R. Evid. 702 and 403, hereby move this Court to exclude Jeremy J. Albright, if Plaintiff-Relator, Michael Yarberry, attempts to introduce testimony from him at trial or in response to Defendants' Motion for Summary Judgment.[1] In support of this Motion, Defendants state:

**BACKGROUND AND SUMMARY OF PURPORTED EXPERT OPINIONS**

Plaintiff alleges that Defendants have violated the False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA"); the Federal Anti-Kickback Statute, 42 U.S.C. §1320a-7b(b); and various false

---

[1] As explained, Plaintiff initially represented that Albright was not an opinion witness under FRE 702 or FRCP 26(a)(2). Plaintiff has since retracted this assertion and sought to treat Albright as an expert opinion witness. Hearing on whether Albright should be considered an expert opinion witness under FRCP 26(a)(2) is scheduled before Magistrate Judge Frazier on August 26, 2013. Defendants submit this motion in accordance with the Court's April 22, 2013 scheduling order and out of an abundance of caution in case Plaintiff is permitted to introduce Albright as an expert opinion witness.

claims acts of the Plaintiff-States. Plaintiff claims that Defendants improperly offered coupons, gift cards and loyalty points to beneficiaries of government healthcare programs ("GHPs") to induce them to purchase prescription drugs at Kmart pharmacies.

Ostensibly in support of his claims, Plaintiff relies on three reports issued by Albright entitled: 1) a November 16, 2012 Preliminary Report on Kmart Corporation Remuneration Data of Jeremy J. Albright, ("November Report"), 2) a Supplement to the November 16, 2012 Report Concerning *United States ex rel. Yarberry, et al. v. Sears Holdings Corp and Kmart Inc*. dated June 20, 2013 ("June Report"), and 3) a Supplemental Report on Reimbursement Values: *United States ex rel. Yarberry, et al. v. Sears Holdings Corp and Kmart Inc*. on July 3, 2013 ("July Report").[2]  In those reports, Albright purports to total the number of transactions in which a GHP Beneficiary redeemed a coupon in connection with a prescription and the amount Kmart was reimbursed for the purchase.

When Plaintiff initially disclosed the November Report,[3] Plaintiff's counsel stated,

> [t]hough [Plaintiff] produce[s] Albright's information in the form of an expert report, I wish to be clear that **his data compilation does not constitute an 'opinion' under the Federal Rules**, however, to preclude claims of improprieties we are disclosing him as such. … His report is a reflection of this technical information.[4]

Albright further confirmed that he was not providing expert opinion testimony on the first page of the November Report, stating that he "has been retained for [his] expertise as a data analyst only," and that "*[N]othing in this or any subsequent report I author should be construed as offering an opinion*." (November Report, Ex. A, p. 1.)  In May 2013, Plaintiff's counsel advised defendants that certain calculations in Albright's November Report had changed. In this email,

---

[2]  True and correct copies of the November, June and July Reports are attached hereto as **Group Exhibit A**.
[3]  The November Report was submitted on November 16, 2012, the original deadline for expert disclosures.
[4]  A true and accurate copy of the November 16, 2013 letter from Plaintiff's counsel is attached hereto as **Exhibit B**.

Plaintiff's counsel referred to Albright again as Plaintiff's "data analyst," not an expert. And lest there be any doubt, during his deposition, Albright was asked whether "these three reports contain any opinions by you?" (Albright Dep., Ex. C, 128:4-5.)[5] He responded, "No." (*Id.* at 128:6.)

Plaintiff submitted the June and July Reports[6] to correct an error that Albright acknowledge to have made in the November Report and to supplement that report based on additional data that Defendants produced. Defendants sought to depose Albright in July 2013 after his July Report. On July 17, 2013, Plaintiff's counsel asserted that Albright was entitled to compensation for the time that would be spent in his deposition pursuant to FRCP 26(b)(4)(E) and that his draft reports and correspondence were protected from discovery under FRCP 26(b)(4)(C).[7]

Defendants' counsel immediately responded that Plaintiff had represented previously that Albright was not an expert, citing the November 16 Letter and the November Report.[8] Plaintiff's counsel responded on July 19, 2013, and for the first time proclaimed that "Albright is qualified as an expert under Evidence Rule 702 and FRCP 26(b)(4)."[9] Plaintiff's counsel represented that Albright would not express an opinion but would testify "otherwise" pursuant to Fed. R. Evid. 702. This information was disclosed with less than 3 weeks remaining in discovery.

Defendants deposed Albright on July 25, 2013. It became clear during that deposition that Albright has no opinions on this matter because his "data aggregation and analysis" is

---

[5] Relevant excerpts from Albright's deposition are attached hereto as **Exhibit C**.
[6] After trial was continued in this matter in April 2013, Plaintiff's expert disclosure deadline was extended to June 5, 2013. The parties extended this date by agreement to June 20, 2013. The June Report was disclosed on this deadline but the July Report was late.
[7] See Email from P. Martins to K. DeShano dated July 17, 2013, attached hereto as **Exhibit D**.
[8] See Email from K. DeShano to P. Martins dated July 18, 2013, attached hereto as **Exhibit E**.
[9] See Letter from P. Martins to K. DeShano dated July 19, 2013, attached hereto as **Exhibit F**.

nothing more than arithmetical calculations and compilations summarizing information contained in other documents. Albright admitted that his reports contain no opinions. (Albright Dep., Ex. C, p. 128.) Albright admits that to calculate the figures in the November Report he "merg[ed] three data sets," and then "count[ed], add[ed] or divid[ed]." (*Id.* at p. 18.) Although the amount of information Albright utilized is substantial, even he concedes that "merging" or "joining" tables is "simple" and "a common data management task that be performed in a variety of software packages." (November Report, Ex. A, p. 7.) The June and July Reports required even less effort. Albright admits he did not have to merge any files to create those reports, but relied on "standalone" data produced by Defendants in response to Interrogatories 6 and 9. (Albright Dep., Ex. C, pp. 94 -95.)

By simply counting and adding the data that Defendants provided, Albright concludes that:

- from November 2007 through May 2013, there were 181,737 transactions in a GHP Beneficiary redeemed a coupon or gift card in connection with the purchase of a prescription and Kmart was reimbursed $8,458,853 from GHPs for the prescriptions (June Report, Ex. A, p. 1; July Report, Ex. A, p. 5); and

- From November 2007 through May 2013 there were 3,336,755 transactions in a GHP Beneficiary earned SYWR points in connection with the purchase of a prescription and Kmart was reimbursed $173,154,191.49 from GHPs for the prescriptions. (July Report, Ex. A, p. 3.)

Albright refers to these amounts as "damages," but concedes that he did not mean legal damages but simply "the number I was asked to report because it was of interest to [Plaintiff's] counsel." (Albright Dep., Ex. C, p. 125.) Importantly, Albright plainly represented that he was not retained to determine the critical issue in this case – whether Kmart's various incentive programs actually *induced* GHP Beneficiaries to fill their prescriptions at Kmart. (*Id.* at 71 (defining "'incentive' as

4

"something provided to encourage a certain type of behavior" and admitting "[t]hat was never part of what I was retained to do.")).

Plaintiff's recently adopted position that Albright is an expert is merely a convenient attempt to avoid producing documents, to seek excessive, unwarranted compensation for Albright, and to inflate the importance of Albright's testimony. By his own admission and those of Plaintiff's counsel, Albright is not an expert and he should not be treated as one here.

## ARGUMENT

Federal Rule of Evidence 702 permits expert opinion testimony where "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue[,]" and when "a witness [is] qualified as an expert by knowledge, skill, experience, training or education[.]" Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); *Winters v. Fru-Con, Inc.*, 498 F.3d 734, 741 (7th Cir. 2007) ("[e]xpert testimony is admissible 'if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue.'"). The burden is on the party offering the proposed expert opinion testimony to establish by a preponderance of the evidence that an expert opinion is admissible. *Otis v. Doctor's Assoc., Inc.*, No. 94-C-4227, 1998 WL 673595, *4 (N.D. Ill. Sept. 14, 1998). An expert "offer[s] opinions and draw[s] inferences based on some special skill, knowledge, or experience that the jurors themselves d[o] not possess." *U.S. v. Swanquist*, 161 F.3d 1064, 1073 (7th Cir. 1998). As the evidentiary "gatekeeper," the Court must "determine[] whether proffered expert testimony is reliable and relevant before accepting a witness as an expert." *Winters*, 498 F.3d at 741.

Albright does not qualify as an expert under Fed. R. Evid. 702 because his testimony is outside the scope of that rule. Plaintiff's counsel represented as much when he initially identified

Albright. And Albright confirmed in his reports and during his deposition that he was offering no opinions. Testimony does not fall within FRE 702 if a trier of fact "is able to evaluate the same evidence and is capable of drawing its own conclusions without the introduction of a proffered expert's testimony," as is the case when a witness merely "quotes verbatim or summarizes" information derived from other sources. *Klaczak v. Consolidated Medical Transport*, 458 F.Supp.2d 622, 665, 668 (N.D.Ill. 2006). By his own description, Albright merely merged data that were provided to him. He is a summary witness and is not entitled to the protections of or treatment as an expert under Fed. R. Evid. 702. Finally, it would be prejudicial to the jury to cloak Albright in the mantle of an expert when all he did was perform simple calculations.

I. **Albright's Opinions Must Be Excluded Because He Was Not Properly Disclosed Pursuant to Fed. R. Civ. P 26(b).**

Whether or not Albright meets the qualifications of an expert opinion witness under Fed. R. Evid. 702, his testimony should be excluded because those opinions were not timely disclosed. *Happel v. Walmart Stores, Inc.,* 602 F.3d 820, 822 (7th Cir. 2010) (proper remedy for failure to disclose expert witness is exclusion of expert testimony). Fed. R. Civ. P. 26(a)(2)(A) requires a party to disclose "the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703 or 705." Such disclosure must include a written report that complies with FRCP 26(a)(2)(B) or (C). *Id.* Although Plaintiff did submit the November Report from Albright within the expert disclosure deadline, the report very clearly stated that "***[n]othing in this or any subsequent report I author should be construed as offering an opinion***." (November Report, Ex. A, p. 1.) Plaintiff's counsel also specifically represented that Albright's compilation "does not constitute an opinion under the Federal Rules." (November 16, 2012 Letter, Ex. B.) Relying on these assurances, Defendants reasonably concluded that

Plaintiff would not attempt to introduce opinions or analysis of Albright as an expert opinion witness under Fed. R. Evid. 702, 703 or 705. The June Report and July Report also did not reference any opinions or expert analysis that Albright planned to provide, but merely supplemented his November Report.[10]

Seven months later and long after the final expert disclosure deadline had passed, Plaintiff reversed course, declaring that Albright was an expert pursuant to FRE 702. (See July 19 Letter, Ex. F.) Such sandbagging is not permitted under the Federal Rules.

II. **Albright's Proposed Testimony Merely Summarizes Other Documents and Should Not Be Admitted Under Fed. R. Evid. 702.**

At its core, expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Winters*, 498 F.3d at 741. Proffered testimony that merely summarizes voluminous documents or records of data is more properly admitted pursuant to Fed. R. Evid. 1006, not as expert testimony under Fed. R. Evid. 702. *Klaczak,* 458 F. Sup. 2d at 665; *see also Swanquist,* 161 F.3d at 1073 (summary witness had not provided expert testimony where he explained summary charts that were compiled from other charts admitted into evidence); *Barner v. City of Harvey,* No. 95 C 3316, 1998 WL 664951, *5 (N.D.Ill. Sept. 18, 1998) (finding testimony admissible under Fed. R. Evid. 1006 rather than Fed. R. Evid. 702 where witness' testimony "include[d] no analysis of the data but instead explain[ed] the sources of his information and an attestation to the accuracy of the data as compared to the original documents.")

    A. **Simple Mathematical Calculations Like Those of Albright Are Not Expert Opinions.**

---

[10] The July Report was, in fact, served *after* the twice-extended expert disclosure deadline. Any conclusion from this report should be separately excluded due to this late disclosure.

7

"[O]ne need not qualify as an 'expert' to testify as a summary witness pursuant to Fed. R. Evid. 1006." *Klaczak*, 458 F.Supp.2d at 666 (internal citations omitted). In *Klaczak*, also a False Claims Act case, the court refused to let a proffered expert testify under Fed. R. Evid. 702 because she did no more than summarize data to reach conclusions about damages calculations. *Id.* at 669. The court held, "[w]ith respect to the expert's damages calculations, a summary chart concerning the volume and value of false claims may be presented in accordance with Rule 1006, but expert testimony is not necessary or helpful on this matter." *Id.* In *Barner*, the plaintiff proffered witness testimony, summarizing how he "placed … personnel records into a database configuration." 1998 WL 664951 at *5. Although the court admitted his testimony, it did not do so as expert testimony, finding the witness offered "no analysis of the data but instead explain[ed] the sources of his information and an attestation to the accuracy of the data as compared to the original documents." *Id.*

Likewise, proffered "expert" opinions that provide no more than conclusory mathematical calculations are not expert because they are not helpful to the jury and accordingly, should not be admitted into evidence. *See Deere & Co. v. Ohio*, No. 02-4011, 2009 WL 6366762, at *7, 9 (C.D. Ill. Oct. 7, 2009) (ruling that two damages experts' opinions were inadmissible where the proffered experts simply calculated costs stated on various documents and did not "opine as to the reasonableness of [] costs incurred by Plaintiff" or whether plaintiff "had incurred the charges that they claimed[.]")  Further, in *Master-Halco, Inc. v. Scillia, Dowling & Natarelli, Inc.*, the Court granted Defendant's motion to exclude Plaintiff's purported damages expert, where the expert "[did] nothing more than add up invoices and then perform[ed] a simple interest calculation" to arrive at an "expert opinion" regarding Plaintiff's damages. No. 09-cv-1546, 2010 WL 2978289, *1 (D. Conn Apr. 9, 2010). In so deciding, the court noted the

8

"narrow" nature of the expert's task, to "add up numbers Plaintiff's counsel told him to add up, apply the interest rate that Plaintiff's counsel told him to apply, and ignore virtually everything else." *Id.* at *5. The court concluded that "[t]here is nothing that [the expert] was asked to do that a jury of laypeople could not do equally well. In fact a jury would probably do a *better* job, as it would at least apply a dose of skepticism to what the attorneys tell it." *Id.* (emphasis in original).

Here, Albright simply counted and summed up data produced by Defendants – he did no analysis to determine if causation was shown in the data or if the data established damages in accordance with the FCA. His conclusions are the same as those in the *Klaczak* and *Barner* cases. They are also similar to the basic mathematical calculations that were found not to be expert testimony in *Deere* and *Master-Halco, Inc.* Albright was retained to use a computer to reorganize source information from other documents. He was not retained to evaluate whether these damages were in fact the result of any alleged inducement. He is not an expert and cannot be admitted as one in this case.

Moreover, Albright's reports are unreliable because there was an error in the method of calculation used to generate tables of information which are the bases for his conclusions in the November Report. (Albright Dep., Ex. C, pp. 77-81.) His later reports are similarly deficient. He acknowledged during his deposition that he ignored certain data that if taken into account, would alter his calculations. (*Id.* at 77-78.) Dr. Albright admits that he did not then update these tables of information for inclusion in the June Report and July Report. (*Id.*; *compare* November Report, Ex. A, p. 11 *with* June Report, Ex. A and July Report, Ex. A.) These deficiencies further illustrate that Albright's reports and conclusions are not proper opinions and cannot be admitted under Fed. R. Evid. 702.

### B. The *Liotine* Case, Cited by Plaintiff, also Did Not Admit Albright as an Expert.

The case Plaintiff cites in which Albright's testimony was admitted, *U.S. ex rel. Liotine v. CDW Government, Inc.*, actually supports Defendants' argument that Albright's testimony should be excluded here. No. 05-33-DRH, 2012 WL 2807040 (S.D.Ill. July 10, 2012). In *Liotine*, the same counsel representing Plaintiff here, the law firm of Aschemann Keller, LLC, represented the plaintiff-relator there. The *Liotine* plaintiff proffered similar testimony from Albright where he used "[defendant's] own sales records, country of origin information, definitions of price codes, and other information … from [defendant]" to produce his reports. *Id.* at *4. The defendant sought to exclude Albright's testimony, claiming that his reports were "peppered with expert opinions." *Id.* at *4. In *Liotine*, plaintiff's counsel conceded that "**Albright is not being offered for expert testimony** and … his reports are explicitly permitted by Federal Rule of Evidence 1006." *Id.* at *3. The court agreed and admitted Albright's testimony under Fed. R. Evid. 1006:

> the Court understands Albright to be an expert in order to accomplish the task he was asked to complete, i.e., to use his specialized computer knowledge to summarize data within the parameters that have been given to him. ***He will not, however, give expert testimony***; rather, he will only testify about the evidence he compiled from the exhibits, which will be in evidence and from [defendant]. This evidence does not require peer reviewed scientific analysis or extrapolation. ***Albright is just a witness qualified by knowledge, skill, experience, training, or education to input data and then explain the results. Albright is not opining on the meaning of those results; rather, he is just reporting what he found and the jury can assess for itself what it means.***

*Id.* at *4 (emphasis added).

Here, Plaintiff's counsel claims that the *Liotine* court referred to Albright as an "expert" in the task of using a computer program to summarize data. (See July 19, 2013 Letter, Ex. F.) But this word is taken out of context. This Court only agreed that Albright was an expert "regarding how he gathered the information for his testimony, i.e., using specialized computer

knowledge to summarize data." *Liotine*, 2012 WL 2807040 at *4. Thus, the Court merely approved of Albright's methods of compilation and admitted the compilation as a summary under Fed. Rule Evid. 1006. *Id.* His calculations were not admitted as expert opinions under Fed. Rule Evid. 702.

Plaintiff's counsel's representation in his November 16 Letter indicated that he intended to submit Albright's analysis in the same manner here – to summarize the voluminous sales data that Defendants produced. (See November 16, 2012 Letter, Ex. B, p. 1). But on July 17, Plaintiff suddenly indicated that Albright is an expert who will testify "otherwise" pursuant to Fed. R. Evid. 702. Consistent with the holdings of the *Liotine* court and the many others cited here, Albright is not an expert under Fed. R. Evid. 702 and his findings must be excluded accordingly.

### III.   Albright's Testimony Also Should be Excluded as Prejudicial Pursuant To Fed. R. Evid. 403.

Finally, even if this court were to consider Albright an expert witness under Fed. R. Evid. 702, his opinions must be excluded pursuant to Fed. R. Evid. 403 because they are unduly prejudicial. Fed. R. Evid. 403 permits the Court to exclude evidence when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations or undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Applying the moniker of "expert" to Albright and his opinions, will likely mislead the jury into thinking that he has implicitly made conclusions that he did not regarding the transactions that are the basis for Plaintiff's allegations. *See, i.e.*, *Master-Halco, Inc.*, at *6 (recognizing that "there is a real danger in permitting [the witness] to testify as an 'expert' . . . [because] the jury could be mislead [sic] into thinking that [the witness] actually *did* do some of the things that he actually did not . . . even assuming that [the witness'] testimony would have *some* value, it would be substantially outweighed by the possibility of

either misleading the jury, causing unfair prejudice, or both.") (emphasis in original).) Accordingly, Albright's proposed expert opinion violates Fed. R. Evid. 403 and should be excluded for this independent reason.

## CONCLUSION

For the foregoing reasons, and based on the foregoing authorities, Defendants respectfully request that this Court find that Jeremy J. Albright is not an expert under Fed. R. Evid. 702, and exclude any testimony or submission by him in this matter and to award Defendants all other and further relief that this court finds just and appropriate.

Dated: August 23, 2013

Respectfully submitted,

By: /s/*Kimberly M. DeShano*
John F. Gibbons (ARDC #6190493)
Kimberly M. DeShano (ARDC #6269627)
GREENBERG TRAURIG LLP
77 W. Wacker Drive, Suite 3100
Chicago, Illinois 60601
Tel: 312-456-8400
Fax: 312-456-8435
gibbonsj@gtlaw.com
deshanok@gtlaw.com

Robert Charrow (Pro Hac Vice)
GREENBERG TRAURIG LLP
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037
Tel: 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
Fax: 202-331-3101
charrowr@gtlaw.com

Jeffrey Greene (Pro Hac Vice)
John F. Farraher, Jr. (Pro Hac Vice)
GREENBERG TRAURIG LLP
One International Place
Boston, Massachusetts 02110
Tel: 617-310-6029
greenej@gtlaw.com
farraherj@gtlaw.com

*Attorneys for Defendants Sears Holdings
Corporation and Kmart Corporation*

## CERTIFICATE OF SERVICE

    I, Kimberly M. DeShano, an attorney, hereby certify that on August 23, 2013, I served the following ***Motion to Exclude Jeremy J. Albright As An Expert Witness*** via the Court's CM/ECF system to the following attorneys of record:

> Timothy Keller
> ASCHEMANN KELLER LLC
> 300 North Monroe Street
> Marion, Illinois 62959-2326
> Telephone: (618) 998-9988
> Facsimile: (618) 993-2565
> E-Mail: tkeller@quitamlaw.org
>
> Paul B. Martins, OHSBA #0007623
> HELMER, MARTINS, RICE &
> POPHAM CO., L.P.A.
> 600 Vine Street, Suite 2704
> Cincinnati, Ohio 45202
> Telephone: (513) 421-2400
> E-Mail: pmartins@fcalawfirm.com
>
> *Attorneys for Plaintiffs*

                                          /s/     Kimberly M. DeShano

*CHI 63885638v6*