**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| THE UNITED STATES OF AMERICA, and THE STATES OF CALIFORNIA, FLORIDA, ILLINOIS, INDIANA, LOUISIANA, MICHIGAN, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, TEXAS, VIRGINIA, and WISCONSIN, *ex rel*. MICHAEL YARBERRY,<br><br>　　　Relator & Plaintiffs,<br><br>v.<br><br>SEARS HOLDINGS CORPORATION, and KMART CORPORATION,<br><br>　　　Defendants. | No. 3:09-cv-00588-MJR/PMF<br><br>CJRA TRACK: C<br><br>TRIAL DATE:  DECEMBER 2, 2013 |

**Relator's Response to Defendants' Motion to Exclude**
**Jeremy J. Albright, Ph. D., As An Expert Witness**

Jeremy Albright, Ph.D., is an expert in statistics and electronic data analysis.  **Exhibit A**, Albright Curriculum Vitae.  In this case, Dr. Albright was retained to analyze several different large electronic databases provided by the Defendants.  This fact was disclosed to the Defendants in Dr. Albright's initial report wherein he stated, "I have been retained for my expertise as a data analyst only.  Noting in this or any subsequent report I author should be construed as offering an opinion on the legal implication of my data aggregation and analysis."  **Exhibit B**, Albright Nov. 16, 2012 Preliminary Report, p. 1.  Dr. Albright produced two supplemental reports in June and July 2013 (**Exhibits C** and **D**) in response to additional databases produced by the Defendants in June 2013 (**Exhibits E** and **F**, Defense June 11 and 17 cover letters for database productions).

He also produced a supplemental report on August 23 (**Exhibit J**) in response to Defendants' August 5 disclosure that their June 11 and 17 disclosures did not contain what they represented in their accompanying cover letters.

While feigning a challenge under *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993), Defendants move to exclude Dr. Albright primarily upon the mistaken belief that a witness cannot be an expert if that witness expresses no opinions.  Defendants' motion should be denied for the following reasons.

- Dr. Albright is an expert under Evidence Rule 702 and *Daubert* standards.

- Dr. Albright was disclosed to the Defendants as an expert in accord with this Court's Scheduling Order.

- Dr. Albright's report complied with the expert disclosure requirements of Civil Rule 26(a)(2).

- Under Evidence Rule 702, a witness need not express an opinion to be an expert.

- Magistrate Judge Frazier has now ruled in this case that Dr. Albright is an expert for purposes of:

  - compelling the Defendants to pay Dr. Albright's fees for preparing and attending his deposition in this case under Civil Rule 26(b)(4)(E);

  - protecting from discovery Dr. Albright's draft expert reports under Civil Rule 26(b)(4)(B); and,

  - protecting from discovery Dr. Albright's communications with Relator's counsel under Civil Rules 26(b)(3) and 26(b)(4)(C).

- Judge Herndon ruled just last December that Dr. Albright was an expert in electronic data analysis in a case where Dr. Albright's general methodologies matched those which he employed in this case.

**I.    Dr. Albright is an Expert Under Evidence Rule 702 and *Daubert*.**

In accord with *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and its progeny, Federal Evidence Rule 702 provides that:

- 2 -

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue;

(b)  the testimony is based on sufficient facts or data;

(c)  the testimony is the product of reliable principles and methods; and,

(d)  the expert has reliably applied the principles and methods to the facts of the case.

Defendants have produced several large electronic databases.  These include:  a DVD containing electronic data labeled "PDX" from Kmart's database of pharmacy sales; a DVD with electronic data labeled "CDW" containing files extracted from Kmart's "Customer Data Warehouse;" a DVD with electronic data labeled "KPOS" from Kmart's electronic register journals, representing "Kmart Point of Sale;" and, several CDs with data extracted in response to Plaintiffs' Interrogatories 6 and 9.  This necessitated the retention of an expert in managing and analyzing such large complex electronic databases.

The size and varying formats of the voluminous databases provided by the Defendants in this case is summarized in the following table:

| Data | Format | Size | Records (Rows / Lines) |
|------|--------|------|------------------------|
| PDX | Pipe Delimited | 42.7 MB | 177,759 |
| CDW | Tab Delimited | 249 MB | 4,294,581 |
| KPOS | Fixed Column ASCII | 156 MB | 2,414,254 |
| Interrogatory 6(d) | Pipe Delimited | 21.3 MB | 177,759 |
| Interrogatory 9(a) | Pipe Delimited | 73.2 MB | 516,168 |
| Interrogatory 9(b-c) | Microsoft Excel | 247.6 MB | 3,336,759 |
| Interrogatory 9(d) | Pipe and Tab Delimited | 85.7 MB | 529,857 |
| Interrogatory 9(e) | Pipe Delimited | 402.4 MB | 3,518,492 |

Whether by design or by circumstance, Defendants provided these databases in a variety of different formats, some of which were difficult to analyze.  Samples of the raw data in these

databases, as they appear in the DVDs and CDs produced by the Defendants, are attached as

**Group Exhibit G**.[1]  Even a cursory examination of these databases readily establish the need for

Relator to obtain the assistance of an expert in electronic data management and analysis, like Dr.

Albright, to make sense of and summarize the relevant information from these mountains of data

to "help the trier of fact to understand the evidence or to determine a fact in issue."

> **A.**     **Dr. Albright's proffered testimony complies with *Daubert*.**

*Daubert* requires the Court, as the gatekeeper, to conduct a two prong assessment of the

proffered expert's testimony:  relevance and reliability.  *Daubert*, 509 U.S. at 597; *Winters v.

Fru-Con, Inc.*, 498 F.3d 734, 741 (7th Cir. 1998).

> **1.**     **Relevance:  Dr. Albright's expert analysis will help the trier of fact**
> **understand the evidence in determining a fact in issue.**

Under the first *Daubert* prong, the Court must determine whether Dr. Albright's proffered

testimony is relevant, i.e., under Evidence Rule 401, whether his testimony has a tendency to

make the existence of any fact that is of consequence to the determination of the action more

probable or less probable than it would be without the evidence.  *Daubert*, 509 U.S. at 591.  This

also covers Evidence Rule 702(a)'s requirement that the proffered testimony "help the trier of

fact to understand the evidence or determine a fact in issue."

Defendants admit that this False Claims Act action concerns "claims that Defendants

improperly offered coupons, gift cards and loyalty point to beneficiaries of government

healthcare programs ('GHPs')...."  Doc. 145, Motion to Exclude Dr. Albright, p. 2.

---

[1] An example of the raw data, as provided by the Defendants, is attached for:  the **PDX database** (**Exhibit G-1**); the **CDW database** (**Exhibit G-2**); the **KPOS database** (**Exhibit G-3**); the **Interrogatory 6(d) database** (**Exhibit G-4**); the **Interrogatory 9(a) database** (**Exhibit G-5**); the **Interrogatory 9(b-c) database** (**Exhibit G-6**); the **Interrogatory 9(d) database** (**Exhibit G-7**); and, the **Interrogatory 9(e) database** (**Exhibit G-8**).  Defendants have designated these databases as Confidential, to be filed under seal pursuant to the Court's Protective Order (Doc. 94), because they contain HIPAA patient and prescription information.  Pursuant to the Court's September 9, 2013 Order (Doc. 162), Relator is filing a Motion for Leave to file these exhibits under seal contemporaneous with the filing of this memorandum.

Dr. Albright examined the databases provided by the Defendants, accepting their representations as to the contents of the databases.  For instance, Dr. Albright accepted as true and accurate the following representation of the Defendants concerning the database they produced in response to Plaintiffs' Interrogatory 9(e)[2] and a Court Order compelling that production:[3]

> The fifth CD, bearing the label Defendants' Response to Interrogatory 9(e) of Plaintiff Michael Yarberry's Third Set of Interrogatories, contains - to the extent available - **individual payments received from or on behalf of Government Health Insurance Programs for each Government Health Insurance Program beneficiary who received a gift card in connection with the sale of a prescription between November 2007 and May 2013.** (Footnote omitted.)  A data dictionary describing the contents of this CD is attached hereto as Exhibit E.[4]

Relying on this representation, Dr. Albright analyzed the Interrogatory 9(e) database and produced his July 3, 2013 supplemental report.  **Exhibit D**.  Such an analysis of this voluminous electronic data is relevant to the issues in this False Claims Act action.  Indeed, only through Dr. Albright's resulting Evidence Rule 1006 summary charts (of Defendants' voluminous databases of individual claims relating to GHP beneficiaries to whom Defendants provided gift cards) will the jury be able to understand the scope of the Anti-Kickback Statute / False Claims Act violations and resulting damages suffered by the United States under 31 U.S.C. § 3729(a).

Accordingly, Dr. Albright's testimony meets the "relevance" *Daubert* prong.

---

[2] Interrogatory 9(e) required:
**For all beneficiaries of a Government Health Insurance Program that received any type of inducement, coupon, gift card, points, or on time guarantee,** (whether through the Gift Cards, $10 On Time Guarantee Cards, Shop Your Way Reward Program, or other programs) **from Defendants between January 2006 and the present, Identify the following**:
* * * * *
(e) **All individual payments Defendants received from or on behalf of Government Health Insurance Program(s) itemized for each beneficiary** Identified in subparagraph (a) contemporaneous with or subsequent to the date of the first remuneration or points given to said beneficiary in response to subparagraph (c), **specifically identifying the date, amount, and payor of the payment(s)**.

[3] *See* Doc. 116, Order; Doc. 143, Plaintiffs' Motion for Sanctions.

[4] **Exhibit F**, Defendant's June 17, 2013 Cover Letter with databases (emphasis supplied).  The Data Dictionary referenced in Defendants' cover letter expressly stated that all entries in Field 16 "**pay_amt**" were the "**Amount received by/on behalf Kmart from GHP**." *Id.* (emphasis supplied).

2.   **Reliability:  Are Dr. Albright's methods of electronic data management and analysis reliably applied.**

Under the second *Daubert* prong, the Court must determine whether Dr. Albright's proffered testimony is reliable, i.e., does it have a reliable basis in the knowledge and experience of the discipline:  electronic data management and analysis.  *Daubert*, 509 U.S. at 592.  "The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate."  *Daubert*, 509 U.S. at 595.  Here, the *Daubert* inquiry is whether the principles and methodology of electronic data management and analysis were properly applied to the Defendants' databases.  *Daubert*, 509 U.S. at 592-93.

As indicated on the first page of his November 16, 2012 Preliminary Report, Dr. Albright has presented workshops on statistics and data management issues in Washington, D.C., Taipei, Taiwan, and Istanbul.  He also teaches graduate level statistics to Masters and Ph.D. students at Eastern Michigan University.  He is experienced as a programmer in a variety of software languages, including SAS, MySQL, R, Stata, and Python.  He has received a Fulbright grant to support data collection in Spain.  **Exhibit B**, November 16, 2012 Preliminary Report, p. 1. Finally, Dr. Albright's consulting firm has been awarded a contract with the Department of Justice to analyze a large electronic database for evidence of overbilling on GSA Schedule sales. **Exhibit C**, Albright June 20, 2013 Supplemental Report, p. 2.

In this case, Dr. Albright affirmatively testified that his methodology and analysis were "completely standard procedure for handling electronic data fields."  Albright Depo., pp. 141:23 - 142:3, attached.  He also affirmed that the methodologies that he employed in all of his electronic data management and analysis activities in this action are considered reliable within the field of electronic data analysis.  Albright Depo., p. 143:6-10.  These statements stand unrebutted.

- 6 -

In fact, the methodology followed by Dr. Albright in his most recent report and summary[5] tracking the number of prescription transactions along with the amount of Government reimbursements for GHP customers who received gift cards from Kmart, follows the same methodology that Defendants say should be used in this analysis.[6]  Therefore, by Defendants' own admission, Dr. Albright's methodology is reliable.

Defendants' only objection to the reliability of Dr. Albright's proffered testimony is to challenge the viability of his conclusions.  As stated above, the *Daubert* inquiry is not concerned with the conclusions reached, or, as Defendants phrase it, whether "he ignored certain data that if taken into account, would alter his calculations."  Doc. 145, Motion to Exclude, p. 9.   This is a matter of weight to be afforded his testimony, not admissibility under the *Daubert* standards.

Defendants' sole reliability argument stems from a calculation that Dr. Albright made in his initial November 16, 2012 report.  Doc. 145, Motion to Exclude, p. 9, *citing* Albright Depo., pp. 77-81.  In his June 2013 supplemental report, Dr. Albright explained that his preliminary findings concerning remuneration for GHP beneficiaries were understated because of a "software glitch" which he corrected in his June 2013 supplemental report.  **Exhibit C**, p. 3.   Specifically, he explained that the October 2012 data produced by the Defendants was encoded in a style called a "pipe delimited file."  Albright Depo., p. 79:8-13.  This is an "uncommon way of recording data."  *Id*. at 79:18-19.  As a result, the software that Dr. Albright initially used "was

---

[5] **Exhibit J**, Doc. 151-1, Page ID #2382, Albright Declaration, ¶ 8.a. (Cross-referencing the PDX and Interrogatory 9(e) databases: " I matched the transactions included in the PDX files from the October, 2012 data production to the transactions in the June 17th response to Interrogatory 9(e) on the basis of store number, sales date, and transaction number. I was thereby able to identify sales involving Medicare Part D using the payor-type1, payor-type2, and payor-type3 fields in the PDX data, and calculate the amount of corresponding reimbursement received by Kmart from the pay_amt column in the Interrogatory 9(e) data.").

[6] Doc. 158, Defendants' Response to Request for Admission No. 1(Cross-referering the PDX and Interrogatory 9(e) databases: "For any prescription purchase identified in Response to Interrogatory 9(e) in which all of the PDX fields 8, 12, 16 are marked "N" or no, Defendants deny that Kmart was reimbursed by any government healthcare plan or Federal government funds for such prescription purchases. For those prescription purchases identified in Response to Interrogatory 9(e) in which any one of the PDX field numbers 8, 12 and 16, each labeled "Government (Y/N)" for the primary, secondary and tertiary payor, is marked "Y" or yes...").

not able to understand where one line of information ended and another one began." *Id*. at

79:19-22.  Accordingly, "when it attempted to read in the data, it, as a consequence, dropped a

substantial number of rows, causing, then, the final database that I was working with to be

incomplete." *Id*. at 79:22 - 80:1.  The result "vastly understated the true amount of remuneration

given to customers insured by government healthcare programs." *Id*. at 77:2-6.

Dr. Albright explained that this software glitch could not be caught by a manual count of

the data because pipe delimited files are "not very easy to read by the human eye." *Id*. at 81:15-

16; *See e.g.,* **Exhibit G-1**, excerpt of PDX pipe delimited database.  He also explained that a

manual count "would have been impossible, given the amount of data that there was." *Id*. at

81:3-4.  Therefore, based upon his expertise, Dr. Albright selected a different software program

to read in the pipe delimited files and then saved it into a more common format for analysis.  *Id*.

at 82:14-16.  Thus, this quality control process demonstrates Dr. Albright's expertise in dealing

with the obscure electronic data production by the Defendants and converting it into a usable

format for analysis.  He not only corrected this error in his June supplemental report but also was

able to perform additional analysis based upon Defendants' June 17, 2013 data production as a

result of the Court's April 11 Order compelling a response to Plaintiffs' Interrogatories 6(d) and

9(e) relating to remuneration provided to GHP beneficiaries and the payments Kmart pharmacies

received in connection with those transactions.

Accordingly, Dr. Albright meets the *Daubert* reliability prong.

**C.     A witness need not offer opinion to be admitted as an expert.**

Throughout the first ten pages of their twelve-page Motion, Defendants mistakenly argue

that a witness can only be an expert if offering an opinion, i.e., an "expert opinion witness."[7]

---

[7] Doc. 145, p. 2, quoting Plaintiffs' counsel, "his [Dr. Albright's] data compilation does not constitute an 'opinion'

Upon this invalid foundation Defendants state that Dr. Albright should be excluded as an expert witness "because his testimony is outside the scope of [Evidence Rule 702]."  Doc. 145, Motion to Exclude Dr. Albright, p. 5.

Likewise, Defendants maintain that Dr. Albright's Evidence Rule 1006 summaries of the thousands of pages and 15 million rows of electronic data excludes him from being an expert. Doc. 145, Motion to Exclude, p. 6.  Both propositions are wrong.  An expert need not express an opinion and may present Evidence Rule 1006 summaries of his assessment of voluminous electronic records. *United States ex rel. Liotine v. CDW Government, Inc.*, No. 05-33-DRH, 2012 U.S. Dist. Lexis 94837, *12-13 (S.D. Ill. July 10, 2012).

Evidence Rule 702 itself provides that an expert witness qualified "by knowledge, skill, experience, training, or education may testify in the form of an opinion <u>or otherwise</u>."  The Advisory Committee Notes explain that a witness may still be qualified as an expert and not express an opinion.

> Most of the literature assumes that experts testify only in the form of opinions. The assumption is logically unfounded.  The rule accordingly recognizes that an expert on the stand may give a dissertation or exposition of scientific or other principles relevant to the case, leaving the trier of fact to apply them to the facts.  Since much of the criticism of expert testimony has centered upon the hypothetical question, it seems wise to recognize that opinions are not indispensable and to encourage the use of expert testimony in non-opinion form when counsel believes the trier can itself draw the requisite inference. The use of opinions is not abolished by the rule, however.  It will continue to be permissible for the experts to take the further step of suggesting the inference which should be drawn from applying the specialized knowledge to the facts.  See Rules 703 to 705.

---

under the Federal Rules"; "expert opinion testimony", quoting Dr. Albright, "nothing in this or any subsequent report I author should be construed as offering an opinion"; p. 3, "Albright has no opinions"; p. 4, "Albright admitted that his reports contain no opinions"; p. 5, "expert opinion testimony"; p. 6, Dr. Albright "was offering no opinions," "expert opinion witness," again quoting Dr. Albright, "nothing in this or any subsequent report I author should be construed as offering an opinion," again quoting Plaintiffs' counsel, "his [Dr. Albright's] data compilation does not constitute an 'opinion' under the Federal Rules"; p. 7, "expert opinion witness," "the June Report and July Report also did not reference any opinions"; p. 8, "expert opinion"; and, p. 9, "Albright's reports and conclusions are not proper opinions and cannot be admitted under Fed. R. Evid. 702."

Fed. R. Evid. 702 Advisory Committee Note. *United States v. Rahm*, 993 F.2d 1405, 1411 (9th Cir. 1993) ("As an initial matter, we note that the admission of expert *testimony,* the issue involved here, and the admission of a specific expert *opinion* are separate determinations. Under the federal rules, an expert 'may testify . . . in the form of an opinion *or otherwise*.' Fed. R. Evid. 702 (emphasis added). Thus, not every expert need express, nor even hold, an opinion with regard to the issues involved in a trial. Indeed, in certain cases, we will not allow an expert to express an opinion as to specific issues even if he or she has formed one. [Footnote omitted] Thus, the decision whether to admit expert *testimony* does not rest upon the existence or strength of an expert's *opinion*. Rather, the key concern is whether expert *testimony* will assist the trier of fact in drawing its own conclusion as to a 'fact in issue.'"); 29 Charles Alan Wright & Victor James Gold, *Federal Practice & Procedure: Evidence* § 6263, p. 197 (1997).

Accordingly, Dr. Albright is qualified under Evidence Rule 702 with specialized technical knowledge to provide expert testimony on his analysis of the various databases produced by the Defendants in this action. Such testimony will help the jury understand the massive electronic databases produced by the Defendants, which contain the key data at issue in this action: identifying each GHP beneficiary to whom the Defendants provided remuneration in the form of gift cards or points, and for which Defendants billed and were paid "from or on behalf of Government Health Insurance Programs." **Exhibit D**, Defendants' June 17, 2013 letter forwarding electronic data in response to Plaintiffs' Interrogatory 9(e).

As indicated above, we have consistently stated from the submission of the initial November 16, 2013 expert report that Dr. Albright is an expert in electronic database management and analysis. He possesses an expertise in this field by virtue of his knowledge, skill, experience, training and education as defined by Evidence Rule 702. His expertise extends

to combining and integrating different databases to answer queries relevant to this action.  He is skilled in his knowledge and experience in working with the various software programs and is aware of their individual strengths and limitations.  He has exercised his expert judgment in selecting the best software for the task of managing and analyzing the various databases produced by the Defendants.  His expertise extends to selecting methods of analysis that are accepted within the field of electronic data management and analysis,[8] and in addressing discrepant findings to ensure quality results.

The fact that Dr. Albright is not an expert in Government Healthcare Programs, Defendants' pharmacy business, or its cash register receipt system is of no consequence when assessing Dr. Albright's *Daubert* qualifications.  The fact that he offers no "opinion on the legal implication of my data aggregation and analysis" in this case does not affect his status as an expert in electronic data management and analysis.  Indeed, an expert cannot proffer legal opinions.  He accepts Defendants' databases as produced and relies upon what Defendants represent is contained in their databases.  This does not disqualify him as an expert.

## II.    Dr. Albright was Disclosed as an Expert Under This Court's Scheduling Order.

Defendants admit that Relator submitted Dr. Albright's November 16, 2012 report "within the expert disclosure deadline."  Doc. 145, Motion to Exclude Dr. Albright, p. 6.  The November 16, 2012 production of Dr. Albright's expert report to Defendants was 115 days prior to the then-established trial date in accord with this Court's scheduling order.  Doc. 143, p. 3.  Accordingly, Dr. Albright was always treated as an expert in this action.

---

[8] Albright Depo., p. 141: 23 - 142:3 ("My opinion is that the type of analysis I carried out was completely standard for handling electronic data files."); p. 143:6 ("Q.  With respect to all of your electronic data analysis, the methodologies that you employed, are they considered reliable methodologies within the field of electronic data analysis?"  A.  Yes.")

### III.   Dr. Albright's Expert Report Complied with Civil Rule 26(a)(2).

That November 16, 2012 report also complied with the expert requirements of Civil Rule

26(a)(2)(B) in that it contained:

(i)     a statement that Dr. Albright that "I have been retained for my expertise as a data analyst only.  Nothing in this or any subsequent report I author should be construed as offering an opinion on the legal implications of my data aggregation and analysis."  **Exhibit B**, Albright Report, p. 1.

(ii)    a statement of the facts or data considered by Albright.  *Id*. at 1-3.

(iii)   exhibits used to summarize or support testimony.  *Id*. at 4-6, 9, 11-13.

(iv)    Dr. Albright's qualifications, including a list of all publications authored in the previous 10 years.  *Id*. at 1 and **Exhibit A**, Curriculum Vitae referenced and provided under the cover letter of Relator's counsel that accompanied the Preliminary Report, **Exhibit H**.

(v)     a list of all other cases in which Dr. Albright testified as an expert at trial or deposition over the past four years.  **Exhibit B**, Albright's Report, p. 1 and **Exhibit A**, Curriculum Vitae.

(vi)    a statement of compensation to be paid for Dr. Albright's study and testimony in this case.  **Exhibit H**, Relator's November 16, 2012 Cover Letter.

Accordingly, Dr. Albright was disclosed as an expert and the report that he provided to

the Defendants complied with all of the requirements for expert disclosure under Civil Rule

26(a)(2)(B).

### IV.   Magistrate Judge Frazier Found That Dr. Albright was an Expert in Ruling on Discovery Motions in this Case.

In conjunction with their July 25, 2013 deposition of Dr. Albright, the Defendants refused

to pay Dr. Albright for his time and expenses in preparing for and attending the deposition,

contrary to Civil Rule 26(b)(4)(E).  Further, Defendants sought the production of all draft expert

reports in violation of Civil Rule 26(b)(4)(B) along with all communications between Dr.

Albright and Relator's counsel, contrary to Civil Rule 26(b)(3) and 26(b)(4)(C).  Defendants'

articulated rationale for such discovery was the same as has been articulated in its current Motion−that Dr. Albright is not an expert and, therefore, not subject to the terms of Civil Rule 26(b)(3) or (b)(4).

Relator's counsel orally raised with Magistrate Judge Frazier a motion to compel the payment and a motion for protective order to preclude the discovery of Dr. Albright's draft reports and communications with counsel. Communications between counsel on these issues were provided to Judge Frazier.[9] On August 26, 2013, after reviewing the correspondence and considering oral argument, Judge Frazier granted Relator's protective order motion as well as our motion to compel, applying the terms applicable to expert in Civil Rules (b)(4)(B) and 26(b)(4)(E) to Dr. Albright. Doc. 155, Minute Entry and Minute Order.

## V. Judge Herndon Found that Dr. Albright was an Expert in Electronic Data Analysis.

Finally, under similar facts in another False Claims Act case, last year Judge Herndon found that Dr. Albright was an expert. In *United States ex rel. Liotine v. CDW Government, Inc.*, No. 05-33-DRH, 2012 U.S. Dist. Lexis 94837 (S.D. Ill. July 10, 2012), the Plaintiff/Relator alleged that CDW violated the False Claims Act in connection with the sale of computer equipment to GSA. *Id.* at *2. There, the Relator retained Dr. Albright to review CDW's voluminous electronic business records (as was done here). Like this case, Dr. Albright made clear that he accepted the CDW electronic data and formed no opinions. Rather, using his expertise in electronic data management and analysis, Dr. Albright prepared Evidence Rule 1006 summary charts of CDW's electronic databases[10]−Dr. Albright has done the same thing here with Defendants' electronic databases. The only difference between the two cases is that in *Liotine*

---

[9] **Group Exhibit I**, Communications between counsel: **Exhibit I-1**, DeShano July 18, 2013 email; **Exhibit I-2**, Martins July 19, 2013 Ltr.; **Exhibit I-3**, Martins July 23, 2013 Ltr.; **Exhibit I-4**, DeShano July 24, 2013 email; **Exhibit I-5**, DeShano July 31, 2013 email.
[10] *Liotine*, 2012 U.S. Dist. LEXIS 94837 at *11.

the defendant argued that Dr. Albright, by virtue of his summary charts, was expressing an

expert opinion; whereas in this case the Defendants are arguing that Dr. Albright (for the same

type of conduct) is not an expert because he is expressing no opinion.

In ruling that Dr. Albright is an expert in electronic database management and analysis−

and not an expert on CDW's operations and billings−Judge Herndon found:

> As to CDW-G's arguments that Dr. Albright's reports are peppered with expert
> opinions, **the Court understands Dr. Albright to be an expert in order to
> accomplish the task he was asked to complete, i.e., to use his specialized
> computer knowledge to summarize data within the parameters that have
> been given to him**. He will not, however, give expert testimony; rather, he will only
> testify about the evidence he compiled from the exhibits, which will be in evidence and
> are from CDW-G. This evidence does not require peer reviewed scientific analysis or
> extrapolation.  Dr. Albright is just a witness qualified by knowledge, skill, experience,
> training, or education to input data and then explain the results. Dr. Albright is not
> opining on the meaning of those results; rather, he is just reporting what he found and
> the jury can assess for itself what it means. **To the extent that Dr. Albright's testimony
> may qualify as expert testimony, regarding how he gathered the information for his
> testimony, under the framework of** *Daubert v. Merrell Dow Pharms., Inc., 509 U.S.
> 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)*, **the Court finds that his testimony
> qualifies for admission under** *Federal Rule of Evidence 702*.  See *Roback v. V.I.P.
> Transport, Inc., 90 F.3d 1207, 1215-16 (7th Cir. 1996)* (finding testimony documenting
> the malfunctioning of a vehicle by gathering and compiling data during a test run
> qualified for admission under *Rule 702* where the expert used standard components
> to assemble his computerized data acquisition system, could have been interrogated
> about the way in which his software worked, and where his data was subject to
> examination and independent verification). Accordingly, CDW-G's motion in limine
> to exclude the data analysis and testimony of Dr. Albright (Doc. 224) is denied.

*Id*. at *12-13 (emphasis added).[11]

This ruling is consistent with what Relator and Dr. Albright have represented since his

initial report was produced on November 16, 2012.  Dr. Albright is an expert in the field of

---

[11] Defendants' disingenuously selectively quote only a part of Judge Herndon's decision in their Motion to Exclude
Dr. Albright, intentionally omitting Judge Herndon's conclusion:  "To the extent that Dr. Albright's testimony may
qualify as expert testimony, regarding how he gathered the information for his testimony, under the framework of
*Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)*, the Court finds that
his testimony qualifies for admission under *Federal Rule of Evidence 702*."  Doc. 145, Motion to Exclude Dr.
Albright as an Expert, p. 10.  This omission was intentional since the complete quote was provided to Defendants a
month before they filed their Motion.  See, **Exhibit I-2**, Martins July 19, 2013 Ltr., p. 2.

electronic data management and analysis.[12]  Just because he is not an expert in Kmart's pharmacy business or cash register receipts, offers no opinions on the propriety or correctness of their underlying practices, and accepts the data as represented by the Defendants, does not make him any less of an expert in electronic data management and analysis.

**VI.     Defendants' Argument that Dr. Albright's Opinions Must be Excluded as Prejudicial Pursuant to Evidence Rule 403 is Meritless.**

Having argued for the first ten pages of their Motion that Dr. Albright must be excluded as an expert witness because he has not expressed any opinions, Defendants then do an about face and argue that Dr. Albright's "opinions must be excluded pursuant to Fed. R. Evid. 403." This argument posits that "[a]pplying the moniker of 'expert' to [Dr.] Albright and his opinions, will likely mislead the jury into thinking that he has implicitly made conclusions that he did not regarding the transactions that are the basis for Plaintiff's allegations."  Doc. 145, Motion, p. 11.

There is no rational basis for this argument.  As outlined above by Judge Herndon and as consistently maintained throughout by Dr. Albright and Relator, he offers no opinions on the underlying electronic data that Defendants produced.  He accepts Defendants' representations on what their electronic data represents.  His expertise is in the field of electronic data management and analysis.  He is an expert who has taken the various Kmart electronic databases and created Evidence Rule 1006 summaries of that data to help the trier of fact understand relevant issues in this case, such as, the number of pharmacy transactions where Kmart gave gift cards were provided to GHP beneficiaries, and the amount Kmart received in prescription payments for

---

[12] **Exhibit B**, November 16, 2012 Preliminary Report, p.1 ("I have been retained for my expertise as a data analyst only.  Nothing in this or any subsequent report I author should be construed as offering an opinion on the legal implications of my data aggregation and analysis."); **Exhibit H**, Keller November 16, 2012 Cover Ltr. ("Though I produce Dr. Albright's information in the format of an expert report, I wish to be clear that his data compilation does not constitute an 'opinion' under the Federal Rules, however, to preclude any claims of improprieties, we nonetheless are disclosing him as such [an expert].  As you will see, his data compilation is simply the merger of disparate electronic data into a functional data set and performing queries upon that data set pursuant to parameters he has been provided.").

these transactions from state and federal government insurers.  There is no unfair prejudice or danger of misleading the jury.

Further, contrary to Evidence Rule 403's prohibition on wasting time, such testimony and summaries will shorten the trial substantially and make manageable what otherwise would be an unintelligible mountain of electronic data from Defendants' business records.

## VI.     Conclusion

Dr. Albright should be allowed to testify as an expert in electronic database management and analysis in this action.  As a matter of law, Defendants primary argument lacks any merit:  a witness need not express an opinion to be an expert.  The facts establish that Dr. Albright complied with all Civil Procedure requirements as well as this Court's schedule in producing his expert report.  Dr. Albright has already been found to be an expert in this case by Magistrate Judge Frazier and, under similar circumstances, by Judge Herndon.

Further, because Defendants have offered no real *Daubert* challenge to:  Dr. Albright's qualifications; the relevance of his testimony (which is based upon their own produced electronic data); or, the reliability of his proffered testimony (which simply summarizes their data under procedures which they acknowledge is correct[13]), Defendants' Motion to Exclude Dr. Albright as an Expert should be denied and the November 15 hearing on this matter should be cancelled.

---

[13] *Compare* Doc. 151-1, Albright Declaration, ¶ 8.a., and Doc. 138, Defendants' Response to Plaintiffs' Request for Admission No. 1 (both identifying the methodology of cross-referencing Defendants' PDX and Interrogatory 9(e) databases).

Respectfully submitted,

Timothy Keller (ARDC # 6225309)
Dale Aschemann (ARDC # 6269347)
ASCHEMANN KELLER LLC
300 N. Monroe Street
Marion, Illinois 62959-2326
Tel: 618-998-9988
Fax: 618-993-2565
tkeller@quitamlaw.org

*/s/ Paul B. Martins*
Paul B. Martins, OH Bar No. 0007623
Julie W. Popham, OH Bar No. 0059371
James A. Tate, OH Bar No. 0085319
HELMER, MARTINS, RICE
& POPHAM CO., L.P.A.
600 Vine Street, Suite 2704
Cincinnati, Ohio 45202
Tel: 513-421-2400
pmartins@fcalawfirm.com

*Attorneys for Plaintiffs and Relator*

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of September, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filings(s) to the following:

**Gerald M. Burke**
gerald.burke@usdoj.gov; sandra.carr@usdoj.gov; donna.gerdes@usdoj.gov

**John F. Farraher, Jr.**
farraherj@gtlaw.com

**Robert P Charrow**
charrowr@gtlaw.com

**Jeffrey Greene**
greenej@gtlaw.com

**John F. Gibbons**
gibbonsj@gtlaw.com

**Kimberly M. DeShano**
deshanok@gtlaw.com

**Pamela J Schieffelin**
schieffelinp@gtlaw.com

Respectfully Submitted,

Timothy Keller, ARDC No. 6225309
Dale Aschemann, ARDC No. 6269347
ASCHEMANN KELLER LLC
300 N. Monroe Street
Marion, Illinois 62959-2326
Tel: 618-998-9988
Fax: 618-993-2565
tkeller@quitamlaw.org

*/s/ James A. Tate*
Paul B. Martins, OH Bar No. 0007623
Julie W. Popham, OH Bar No. 0059371
James A. Tate, OH Bar No. 0085319
HELMER, MARTINS, RICE
& POPHAM CO., L.P.A.
600 Vine Street, Suite 2704
Cincinnati, Ohio 45202
Telephone: (513) 421-2400
jtate@fcalawfirm.com

*Attorneys for Plaintiffs and Relator*