IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| STATE OF CALIFORNIA, et al., ex rel. | ) | |
| MICHAEL YARBERRY, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 09-CV-588-MJR-PMF |
| | ) | |
| vs. | ) | |
| | ) | |
| SEARS HOLDING CORPORATION | ) | |
| and KMART, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# MEMORANDUM AND ORDER

REAGAN, District Judge:

### Introduction & Procedural Background

This action is brought *qui tam* by Relator Michael Yarberry ("Relator") on behalf of the United States Government. Relator is a resident of Kentucky and was an employee of Defendant Kmart Corporation ("Kmart") at various times from 1992 to 1999, 2004 to 2008, and 2009 to the present (Doc. 148-1, p. 2). He is also a pharmacist in Kmart store 4180 located in Louisville, Kentucky (*Id*.). Kmart is a wholly-owned subsidiary of Defendant Sears Holding Corporation (Doc. 148-1, p. 2). From 2005 to 2013, Kmart operated anywhere between 895 and 1,100 retail pharmacies, depending on the year (*Id*.).

Relator asserts that from approximately 2006 to the present, Defendants Sears and Kmart violated the federal False Claims Act ("FCA"), 31 U.S.C. §§ 3729(a)(1) and

(a)(2), as well as the Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b, and parallel state statutes, by offering and paying monetary inducements, such as cash gift cards and/or coupon promotions, to the beneficiaries of Government Healthcare Programs ("GHPs"), including Medicare, Medicaid, TRICARE and CHAMPUS, in exchange for beneficiaries filling their prescriptions at Defendants' pharmacies.

Relator has designated Jeremy J. Albright ("Dr. Albright") as an expert witness to analyze and offer opinions regarding several different electronic databases produced by Defendants in discovery. Dr. Albright purports to total the number of transactions in which a GHP beneficiary redeemed a coupon in connection with a prescription and the amount Kmart has reimbursed for the purchase. On August 26, 2013, after Dr. Albright was deposed, Magistrate Judge Frazier held a hearing on the issues of whether Dr. Albright's draft reports were protected under Rule 26(b)(4)(B) and whether Defendants should be compelled to pay a reasonable deposition fee to Dr. Albright per Rule 26(b)(4)(E) (*See* Doc. 155). In that hearing, Magistrate Judge Frazier determined that the draft reports prepared by Dr. Albright were protected under Rule 26(b)(4)(B) and ordered Defendants to reimburse Dr. Albright for time spent preparing for his deposition and giving deposition testimony (*Id.*). On August 23, 2013, Sears and Kmart moved to exclude Dr. Albright as a Rule 702 expert under the expert testimony framework set forth in ***Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)** (Doc. 145). On November 15, 2013, the Court held a hearing on the motion. At this hearing, both sides presented oral arguments. The undersigned District Judge denied the motion, indicating that a written ruling would follow.

## Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony and states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702.

In *Daubert*, the Supreme Court held that expert testimony was admissible only if relevant and reliable. The objective of *Daubert* is to ensure that "an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." **Kuhmo Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999).** The Federal Rules of Evidence assigned to the trial judge the task of insuring that an expert's testimony rested on a reliable foundation and was relevant to the task at hand ("gatekeeping"). **Daubert, at 591**.

Reliability, in the *Daubert* framework, often requires the evidence to be well-grounded in methods and procedures of science and not merely beliefs or subjective speculation. *See Chapman v. Maytag Corp.*, **297 F.3d 682, 687 (7th Cir. 2002)**. *Daubert* offers a non-exclusive list of factors to aid judges in determining whether a particular expert opinion is reliable and grounded in reliable scientific methodology. **Daubert, at 591.** The list includes specific factors: (1) whether the proffered testimony (or

3

theoretical framework or technique underling it) is subject to verification through testing, (2) whether the testimony/technique has been subjected to peer review and publication, (3) what its known or potential rate of error is, (4) whether there are standards controlling its application, and (5) whether it is generally accepted within the relevant expert community. *Id.* **at 591-93**.

As the gate-keeper, a district judge asked to admit scientific evidence must determine whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist. ***Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996)**. The Supreme Court clarified in *Kuhmo Tire* that the trial Judge's 'gate-keeping' function applies to all expert testimony, not just expert testimony based on science. ***Kuhmo Tire*, 526 U.S. at 141**. As the gate-keeper, a District Court should consider certain criteria in deciding whether testimony satisfies *Daubert*, including the five nonexclusive guideposts of *Daubert*. ***Mihailovich v. Laatsch*, 359 F.3d 892, 918-19 (7th Cir.), cert. denied, 543 U.S. 926 (2004)**. These five factors should be flexibly applied depending on the type of expert testimony at issue. ***Mihailovich*, 359 F.3d at 919**. Condense distill

*Daubert* also makes clear that even if a proffered expert opinion meets the reliability standard, the expert testimony will not be admitted unless it is relevant and "will assist the trier of fact in understanding the evidence or determining a fact in issue." ***SEC v. Lipson*, 46 F. Supp.2d. 758, 762 (N.D. Ill. 1999)**.

To be relevant, expert testimony must satisfy two elements. First, the proffered testimony must relate to a fact in issue: "expert testimony which does not relate to an

issue in the case is not relevant, and, ergo, non-helpful." *Porter v. Whitehall Laboratories, Inc.*, **9 F.3d 607, 613 (7th Cir. 1993)**. Second, the proffered testimony must "assist the trier of fact" in understanding what otherwise might be outside its grasp and may not be used merely to repeat or summarize what the trier of fact independently has the ability to understand. *Id.*

Further, the proponent of the expert bears the burden of demonstrating that the expert's testimony will satisfy the *Daubert* standard. **Fed. R. Evid. 702** *advisory committee's note (2000 Amends.)*. The admissibility of all expert testimony is governed by the principles of Rule 104(a). Under that Rule, the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence. *Lewis v. CITGO Petroleum Corp.*, **561 F.3d 698, 705 (7th Cir. 2009)**.

As a final matter, Federal Rule of Evidence 1006 provides that a "proponent may use a summary, chart, or calculation to prove the content of the voluminous writings, recordings, or photographs that cannot be conveniently examined in court." FED.R.EVID. 1006. "The provision, however, is not an end around to introducing evidence that would otherwise be inadmissible; therefore, in applying this rule, we require the proponent of the summary to demonstrate that the underlying records are accurate and would be admissible as evidence." *United States v. Oros*, **578 F.3d 703, 708 (7th Cir. 2009) (citing** *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, **529 F.3d 371, 382 (7th Cir. 2008)**.

### Application and Analysis

Defendants filed a motion to exclude the expert testimony of Dr. Albright on August 23, 2013. Defendants do not seek to exclude Dr. Albright's testimony all together, but move to exclude Dr. Albright from testifying as an expert under Federal Rule of Evidence 702. Specifically, Defendants assert that Dr. Albright's testimony should be presented under Federal Rule of Evidence 1006 only. The motion submitted by Defendants lays out arguments for excluding Dr. Albright's testimony under Rule 702 (Doc. 145). On November 15, 2013, the Court heard oral arguments on the motion at the *Daubert* hearing.

Defendants first assert that Dr. Albright was not properly disclosed pursuant to FED. R. CIV. P. 26. Rule 26(a)(2) requires parties to "disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence." **FED.R.CIV.P. 26(a)(2)(A)**. Such a disclosure must include a written report that complies with FRCP 26(a)(2)(B) or (C).

Here, on November 16, 2012, Relator first disclosed Dr. Albright by submitting his "Preliminary Report on Kmart Remuneration Data" (Docs. 145-1 & 169-2). In that report, Dr. Albright stated: "I have been retained for my expertise as a data analyst only. Nothing in this or any subsequent report I author should be construed as offering an opinion on the legal implications of my data aggregation and analysis." (Docs. 145-1 & 169-2).

The report also referenced the data and facts he considered, the exhibits used to support his testimony, his curriculum vitae, a list of all of his publications from the past ten years, a list of all other cases in which Dr. Albright testified as an expert at trial or

deposition over the past four years, and a statement of the compensation to be paid for his study and testimony in this case (*Id*.). This report was subsequently amended by Dr. Albright on two occasions. Because Dr. Albright was initially disclosed well within the expert disclosure deadline of June 5, 2013 (*See* Doc. 120), and his preliminary report (and all subsequently amended reports) have met the requirements of Rule 26(a)(2), the Court will not exclude Dr. Albright on the basis of untimeliness.

Defendants also argue that Dr. Albright should not be allowed to testify under FED. R. EVID. 702 because he is merely a summary witness and his testimony would not assist a jury. Defendants instead assert that Dr. Albright should only be permitted to testify under Rule 1006.

Dr. Albright works in the field of statistics and electronic data analysis and would testify as an expert in that field. He was retained to analyze several different large electronic databases provided by Defendants in discovery. Specifically, he manipulated a software program to distill out and summarize the relevant information from these databases. The findings in his first analysis turned out to be understated due to a software glitch in the program. Dr. Albright then used his expertise to select a different software program that was able to read the data. Dr. Albright has condensed his findings into a table, which is entirely based off of Defendants own sales records and data.

Both parties cite to *U.S. ex rel. Liotine v. CDW Government, Inc.*, **No. 05-33, 2012 WL 2807040 (S.D. Ill. July 10, 2012)**, a case in which Dr. Albright was also a witness in this district before the Honorable Chief Judge David Herndon. In *Liotine*, the relator

7

retained Dr. Albright to review voluminous electronic business records provided by defendants. *Id*. **at 4**. Dr. Albright had used "[defendant's] own sales records, country of origin information, definitions of price codes, and other information . . . from [defendant]" to produce his reports. *Id.* The defendant filed a motion *in limine* to exclude Dr. Albright's data analysis and testimony asserting that his reports were "peppered with expert opinions, [were] based on missing and fabricated data and mistaken assumptions, and because Dr. Albright had no personal knowledge of the underlying information." *Id.* **at 4**. The Court denied the defendant's motion and allowed Dr. Albright's reports to be admitted under Rule 1006. *Id*.

Notably, although the relator in *Liotine* did not offer Dr. Albright for expert testimony under Rule 702, the Court nonetheless found: "[t]o the extent that Dr. Albright's testimony may qualify as expert testimony, regarding how he gathered the information for his testimony, under the framework of *Daubert v. Merrell Dow. Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Court finds that his testimony qualifies for admission under Federal Rule of Evidence 702." *Id.* **at 4**. The motion *in limine* to exclude the data analysis and testimony of Dr. Albright was ultimately denied. *Id*.

Here, as was the case in *Liotine*, Dr. Albright has been retained to review voluminous business records provided by Defendants. He has made clear that he has formed no opinions, but instead relies upon the data that Defendants have submitted to him and represent is contained in their databases. Also similar to *Liotine*, Dr. Albright prepared Rule 1006 summary charts of Defendants' electronic databases. These charts,

8

particularly the table referenced at the *Daubert* hearing, demonstrate the size and complexity of these databases, as well as the need to distill this information down to the key data at issue for the jury. In presenting this table to the jury, Dr. Albright will need to explain the process by which he used his expertise to derive this information. Just as Chief Judge Herndon found in *Liotine*, the undersigned District Judge also finds that Dr. Albright is an expert in how he gathered this information, which includes: merging databases, making a master database, and making inquiries off of that database to draw out information that is relevant to the issues in this case.[1]

After considering the parties' arguments and Dr. Albright's testimony, the Court concludes that Dr. Albright qualifies as an expert under Rule 702.

## Conclusion

For the foregoing reasons, the Court **DENIES** Defendants' motion to exclude Jeremy Albright from testifying as an expert under Federal Rule of Evidence 702 (Doc. 145).

**IT IS SO ORDERED.**

DATED: November 22, 2013

s/ Michael J. Reagan_____
MICHAEL J. REAGAN

---

[1] Defendants also cite to *Deere & Co. v. Ohio Gear* to assert that proffered expert testimony on basic mathematical calculations "are not expert opinions because they are not helpful to the jury" (Doc. 145, p. 8). This case is distinguishable on the bases that, in *Deer*, the Court found that the expert's analysis was "not grounded in identifiable principles or standards." ***Deere & Co. v. Ohio Gear*, No. 02-4011, 2009 WL 6366762, at \* 6 (C.D. Ill. Oct. 7, 2009)**. This is simply not the case here. Instead, and unlike *Deer*, Defendants do not even challenge Dr. Albright's methods and how he compared the data. Nor do Defendants challenge Dr. Albright's reliability.

9

United States District Judge